UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CATHY GERMAY,

       Plaintiff,

v.                                    Case No. 1:12-cv-1157
                                     Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                      /

## OPINION

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for child's insurance benefits[1] and supplemental security income (SSI).

       Plaintiff was born on July 19, 1982 (AR 100).[2] She alleged a disability onset date of July 18, 2003 (AR 238). Plaintiff graduated from college with a degree in fine arts (painting) and had previous employment as a painting instructor, a self-employed artist and a fast food worker (AR 135, 146, 698-701). Plaintiff identified her disabling conditions as: hereditary hemorrhagic

---

[1] *See* 20 C.F.R.§ 404.350(a)(5) ("You are entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died if . . .(5) . . . you are 18 years old or older and have a disability that began before you became 22 years old[.]")

[2] Citations to the administrative record will be referenced as (AR "page #").

telangiectasia (HHT)[3]; left lung wedge resection for with arterial venous malformations (AVM's); chronic pain due to surgery; depression; schizophrenia; and nerve damage (AR 134).

After an administrative hearing held on November 25, 2008 (AR 693-753), the administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits on February 5, 2009 (AR 31-38). The Appeals Council remanded the case for additional review and fact finding (AR 40-42). A second hearing was held on August 17, 2010 (AR 754-80). The ALJ reviewed plaintiff's claim *de novo* and entered a decision denying benefits on September 21, 2010 (AR 18-26). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

---

[3] "Telangiectasia" is defined as "permanent dilation of preexisting blood vessels (capillaries, arterioles, venules), creating small focal red lesions, usually in the skin or mucous membranes." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 1664. "Hereditary hemorrhagic telangiectasia" is defined as "an autosomal dominant vascular anomaly characterized by the presence of multiple small telangiectases of the skin, mucous membranes, gastrointestinal tract, and other organs, associated with recurrent episodes of bleeding from affected sites and gross or occult melena." *Id.*

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not attained the age of 22 as of the alleged disability onset date of July 18, 2003, and that she has not engaged in substantial gainful activity since that date (AR 20). Second, the ALJ found that plaintiff had severe impairments of: hereditary hemorrhagic telangiectasia, with arterial venous malformations (AVM's) and resultant epistaxis[4]; and anemia (AR 20). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR

---

[4] "Epistaxis" is defined as "nosebleed; hemorrhage from the nose." *Dorland's Illustrated Medical Dictionary* at p. 569.

22). Specifically, the ALJ found that there is no specific listing for evaluating HHT with venous malformations, and plaintiff did not meet the requirements of Listing 7.02 (chronic anemia) (AR 22).

The ALJ decided at the fourth step that plaintiff "has the residual functional capacity to perform work limited to lifting up to 20 pounds occasionally and 10 pounds frequently; sitting up to 6 hours and standing/walking up to 6 hours in an 8-hour workday; and only occasional overhead work with the left upper extremity" (AR 22). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 24).

At the fifth step, the ALJ determined that plaintiff could perform a range of light work in the national economy (AR 25). Representative occupations in the regional economy (Michigan) included 40,000 unskilled, light clerical jobs, including general office clerk, file clerk, photocopy machine attendant, or medical records scanner (AR 25). Accordingly, the ALJ determined (1) that based on her application for child's insurance benefits, plaintiff was not disabled as defined in the Social Security Act prior to July 18, 2004, the date she attained age 22, and (2) that based on her application for SSI, plaintiff was not disabled as defined in the Social Security Act from July 18, 2003 (the alleged onset date) through September 21, 2010 (the date of the decision) (AR 25-26).

### III. ANALYSIS

Plaintiff raised three issues (with sub-issues) on appeal:

**A.**  **The ALJ's decision was not based on substantial evidence because he failed to give proper weight to the findings and opinion plaintiff's physicians as required by 20 C.F.R. § 416.927(d) and applicable case law.**

Plaintiff contends that the ALJ failed to give proper weight to the opinions of her treating physicians. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.

5

2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

> **1. The ALJ did not address and/or give proper weight to Dr. McKay's statements.**

Gianna McKay, M.D., provided a statement regarding plaintiff's condition on December 22, 2008 (AR 634-39). Dr. McKay treated plaintiff since 2007 (with the doctor's office having treated plaintiff since 1994), and diagnosed her with HHT, post thoracotomy syndrome, anemia, frequent epistaxis, migraine headaches, and allergies (AR 634). The doctor identified the vocationally relevant major symptoms as follows "[t]he primary symptom would be the left upper chest pain that radiates into her arm that is worsened by upright activity including walking and sitting and fatigue that is worsened by activity which is secondary to her anemia and medications" (AR 634). Given plaintiff's anemia, the side effects of her medications, and her "overall clinical picture," the doctor thought it was medically reasonable for plaintiff to take naps during the day (AR 634). Dr. McKay also thought plaintiff's pain or other symptoms were sufficiently severe to interfere with her attention and concentration, even if she was performing a simple, unskilled sedentary job (AR 634-35). The interference would be frequent and over a sustained period of time (AR 635). The doctor also opined: that plaintiff could walk about one block or 15 minutes at a time; that she could sit for up to two hours and stand less than two hours in an eight-hour workday; that she would need to take an unscheduled break about once an hour; that plaintiff could lift at most 10 pounds; that her neck movement (flexion, turning, looking up, or holding a static position) would be restricted; that she would have less than frequent use of her upper extremities; that plaintiff's

7

description having nosebleeds once or twice a day are consistent with her hemoglobin level; and, that plaintiff's reported pain in her upper left chest is consistent with post thoracotomy pain syndrome (AR 635-37). However, the doctor could not "medically explain the radiation to her left leg" (AR 618). Finally, Dr. McKay opined that plaintiff could not work an eight-hour workday with normally scheduled breaks:

> I think her pain is the first factor but the fact that she is on medications that can affect her energy [sic] in addition to her anemia which also significantly contributes to her inability to have that kind of attention or focus for an eight hour period.

(AR 638).

In reviewing the medical evidence, the ALJ summarized plaintiff's treatment history as follows. The ALJ found that "while there is evidence of deconditioning, there is no objective evidence of a problem beyond anemia" (AR 23). Plaintiff had a history of pain, but when discharged from a pain clinic in September 2006, she reported no pain with palpation (AR 23). A University of Michigan Hospital doctor who had followed plaintiff's underlying disease noted that the pain was nicely controlled in January 2007 (AR 23, 593). In April 2007, Dr. McKay noted that plaintiff was in no apparent distress on examination and recommended exercise (AR 23). Plaintiff's anemia increased in 2009, but at that time plaintiff admitted that she was not taking iron supplements as prescribed (AR 23). By September 2009 plaintiff's anemia improved with medication and her pain was generally well-controlled (AR 23). In July 2010, a pain and rehabilitation specialist, Gholamreza Shareghi, Ph.D., M.D., found that plaintiff's upper extremities were normal (AR 23, 630).

The ALJ reviewed Dr. McKay's 2008 opinion as follows:

> As for the opinion evidence, claimant offered the December 2008 statement of Dr. McKay, her primary care doctor (Exhibit 29F/26-30). While Dr. McKay is

> not a specialist, she certainly would be familiar with claimant's complaints and general condition. The doctor concluded claimant had severe limitations in many respects and could not work since 2003 (ibid, at 30). I would note, however, that while opinions from treating physicians are to be carefully considered and may be entitled to controlling weight on issues concerning the nature and severity of an individual's impairments, a conclusion regarding the issue of disability is reserved to the Commissioner (Social Security Ruling 96-5p). In this instance, I assign little weight to Dr. McKay's opinion. Logically, it must be based on the underlying diagnosis, combined with the subjective complaints, since even Dr. McKay notes little objective evidence of a problem in her treatment notes. Yet, Dr. McKay conceded that some of those subjective complaints are hard to explain medically (Exhibit 29F/29), and she does not appear to give any credence or consideration to the history of at least intermittent improvement with various treatment modalities. She overlooks her own notes, which confirm that the pain is well-controlled with medication. She does not address the improvement in the anemia with the current treatment.

(AR 24).

However, as plaintiff pointed out, Dr. McKay updated her 2008 statement in 2010, but the ALJ did not address the more recent statement. Plaintiff's Brief at pp. 5, 12. Dr. McKay made this statement on August 16, 2010 (the day before plaintiff's hearing), but it was not transcribed and signed by Dr. McKay until September 8, 2010 (AR 660-64). The statement was faxed to the ALJ on September 14, 2010 and identified as in the medical record as Exhibit 35F (AR 659). Defendant acknowledges that Dr. McKay gave an updated assessment on August 16, 2010 and that the ALJ did not address it in his decision. Defendant's Brief at pp. 9-10. Defendant takes the position that Dr. McKay's August 16, 2010 statement "merely reiterated her December 8, 2008 statement, which, as discussed above, the ALJ properly gave little weight to" and that the ALJ's lack of specific discussion of the August 16, 2010 statement was a harmless, *de minimis* procedural error which could conceivably exist under *Wilson*. *Id.* at p. 10. *See Wilson*, 378 F.3d at 547 (while the regulations require the ALJ to give good reasons for the weight assigned to a treating source's opinion, the Sixth Circuit observed "[t]hat is not to say that a violation of the procedural requirement

9

of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a *de minimis* violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal").

Here, it is undisputed that Dr. McKay is plaintiff's primary care doctor. The Court does not view Dr. McKay's 2010 opinions so "patently deficient" as to avoid the procedural requirements set forth in *Wilson*. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should evaluate Dr. McKay's updated statement made on August 16, 2010 (AR 660-64).

### 2. The ALJ did not consider Dr. Shareghi's statement.

At the hearing, plaintiff's counsel wanted to send the ALJ additional opinion evidence from Dr. Shareghi. The ALJ noted that he had records from Dr. Shareghi from as recent as July 22, 2010, and told plaintiff's counsel that he had "an obligation to read anything you send me, and if you send it to me before I sign off on a decision, I'll read it and consider it and put it into the, into the decision" (AR 758). Plaintiff's counsel sent the ALJ an unsigned copy of Dr. Shareghi's statement on September 17, 2010 (AR 665-69), but he was unable to send the signed version until September 21, 2010, the same date the ALJ issued his decision. While it is possible that the ALJ rejected Dr. Shareghi's unsigned opinion on authenticity concerns, he did not address that issue in his decision. However, since the ALJ received Dr. Shareghi's signed opinion on the same day as he issued he decision, and this matter is being remanded, there is no reason why the ALJ cannot review that opinion on remand. Accordingly, on remand, the ALJ should evaluate Dr. Shareghi's September 21, 2010 opinion.

B.  **The ALJ's decision that plaintiff's thoracic pain syndrome and mental impairments do not constitute severe impairments is not supported by substantial evidence.**

Plaintiff contends that the ALJ erred by failing to find that her thoracic pain syndrome and mental impairments constituted severe impairments. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id.* Here, the ALJ found that plaintiff had multiple severe impairments and performed the remaining steps of the disability evaluation. This claim of error will be denied.

C.  **The ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence as required by 20 C.F.R. § 416.914 and applicable case law.**

1.  **The RFC does not accurately portray plaintiff's well-established impairments on plaintiff's ability to function, as required by 20 C.F.R. § 416.945 and SSR 98-6p.**

Residual functional capacity (RFC) is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 416.945. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, §

11

200.00(c); *See Cohen*, 964 F.2d at 530. "The RFC assessment must address both the remaining exertional and nonexertional capacities of the individual." SSR 96-8p.[5] Plaintiff contends that the RFC assessment did not take into account her nosebleeds, which, according to plaintiff, occur once or twice a day, lasting about 30 minutes (AR 762). During that time, blood goes out her nostrils and down her throat (AR 762). Sometimes she can control it with a tissue, but other times if the blood is "rolling everywhere" she has to stand over a sink or waste basket (AR 762). The type of nosebleeds that plaintiff suffers are more than a periodic nuisance. Dr. McKay corroborated the fact that plaintiff suffers from daily nosebleeds and this was one cause of plaintiff's anemia (AR 635-37, 662). As a practical matter, this type of condition would certainly affect plaintiff's ability to function in a work setting. For example, plaintiff's attorney posed a hypothetical question to the vocational expert (VE) regarding the nosebleeds:

> [L]et's assume that every other day, [plaintiff] had a nose bleed during the course of the work day that took her off, was of course unscheduled, unpredictable and it took her off task for the duration of the nose bleed. And of course, there'd be a bit of blood around and she'[d] have to attend to that. Would that preclude all work?

(AR 778). In response, the VE testified "It would appear so" (AR 778).

It is undisputed that plaintiff suffers from frequent and significant nosebleeds. The ALJ found that this condition was a severe impairment (AR 20). The VE testified that this condition could be work preclusive (AR 778). However, plaintiff's RFC was mute with respect to limitations caused by this condition. Given this record, the RFC did not accurately reflect plaintiff's ability to

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006), quoting *Wilson*, 378 F.3d at 549 (citations omitted).

function in a work setting. Accordingly, on remand, the ALJ should re-evaluate the evidence with respect to plaintiff's nosebleeds and determine the extent to which this condition affects her RFC.

> **2. The ALJ's decision is not supported by substantial evidence because he failed to follow 20 C.F.R. § 416.929 and applicable case law in assessing plaintiff's credibility.**

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ's evaluation of plaintiff's credibility included the following observations:

> As noted earlier, claimant alleges considerable impairment of her physical function, as a result of the chronic pain from her thoracotomy, the fatigue from her epistaxis with resultant anemia, and the more practical problem of dealing with

13

frequent nosebleeds while trying to perform various activities. The medical evidence of record reflects consistent subjective complaints of pain over the years, reportedly only intermittently relieved by or somewhat controlled by treatment.

A careful review of the medical evidence demonstrates that while there is evidence of deconditioning, there is no objective evidence of a problem beyond anemia. The alleged onset date is in July 2003. In October 2004, after surgery, claimant reported she usually sleeps OK and can get most of her chores done (Exhibit 7F/11). She had no pain with movement and full range of motion (ibid). In December 2004, after additional treatment, claimant reported being able to do all her activities of daily living (id, at 15). Pain continued to flare up and she complained of fatigue, but in May 2006, she was noted to have no anemia (Exhibit 13F/11). Her clinical examination was generally negative, except for pain and some "disuse" atrophy (ibid, at 7, 10). She was discharged from a pain clinic in September 2006 (Exhibit 23F/14). At that time, she had no pain with palpation, though the next month she reported pain with palpation (ibid, at 13). Her treating doctor since 2007, Gianna McKay, noted in April 2007 that she was in no apparent distress on examination (id, at 10). The doctor recommended exercise.

The University of Michigan Hospital doctor who followed the underlying disease noted the pain was "quite nicely" controlled in January 2007 (Exhibit 29F/4). The next year, it was not (ibid, at 2). The year after that, claimant was found to be stable, with "occasional epistaxis" (Exhibit 32F/3). But a month later, Dr. McKay noted "frequent" epistaxis (Exhibit 33F/6). Claimant admitted she was not taking iron supplements as prescribed to address her anemia, but the minimal amount she took had improved her hemoglobin testing (ibid). In June 2009, claimant's anemia had increased, but she admitted she was again not taking any iron (id, at 5). In September 2009, claimant admitted her pain was well-controlled in general, though it increased with activity (id, at 4). Her anemia had again improved with medication (id, at 3).

Finally, a pain and rehabilitation specialist noted in July 2010 that claimant had a normal, bilateral upper extremity examination (Exhibit 30F/4). Although she complained of cervical spine pain, the doctor felt the cause of it was "unclear" (ibid, at 6). He wondered if the opiate medication was contributing to the pain (id, at 4).

(AR 23).

The ALJ summarized his credibility determination as follows:

The evidence indicates that claimant's complaints are not well supported by objective findings. Her clinical examinations are generally objectively normal. The objective finding of anemia is, indeed, present and may cause fatigue, but claimant has been non-cooperative with her treatment. When she cooperates, the condition

14

improves. She complained that the medication made her nauseous, but that is a recent complaint and the new medication seems to be working well.

(AR 23-24).

The ALJ properly discounted plaintiff's credibility after identifying contradictions among the medical records, plaintiff's testimony, and other evidence. *Walters*, 127 F.3d at 531. However, as discussed, the ALJ did not review Dr. McKay's updated statement from 2010. Because the ALJ's credibility determination was based on an incomplete medical record, the Court concludes that the credibility determination is not supported by substantial evidence. *See Rogers*, 486 F.3d at 249. On remand, the ALJ should re-evaluate plaintiff's credibility based upon the complete medical record.

### 3. Because the ALJ's RFC is deficient, his hypothetical to the VE is legally insufficient.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. Here, the ALJ posed a hypothetical question to the VE which reflected the RFC determination (AR 22, 776-77). Both the RFC determination and the hypothetical question were based, in part, upon the ALJ's review of Dr. McKay's opinions and records. However, as discussed, *supra*, the Court concluded that a reversal and remand under sentence four is in order because the ALJ did not review Dr. McKay's updated statement from

August 16, 2010. In addition, the RFC did not address plaintiff's chronic nosebleeds. These infirmities carried over into the hypothetical question posed to the VE which, as a result, did not accurately portray plaintiff's limitations. The Commissioner should re-evaluate the vocational evidence at the fifth step of the sequential process.

### IV. CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should (1) evaluate Dr. McKay's August 16, 2010 updated statement, (2) re-evaluate the evidence with respect to plaintiff's nosebleeds to determine the extent to which this condition affects her ability to function in a work setting, (3) re-evaluate plaintiff's credibility based upon the complete medical record, (4) evaluate Dr. Shareghi's September 21, 2010 opinion, and (5) re-evaluate vocational evidence at the fifth step of the sequential process. A judgment consistent with this opinion shall be issued forthwith.


Dated:  March 31, 2014                                          /s/ Hugh W. Brenneman, Jr.
                                                                HUGH W. BRENNEMAN, JR.
                                                                United States Magistrate Judge